UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

FELIPE ALVARADO GONZALEZ,

Petitioner.

Criminal Action No. 3:13-CR-178-12
Civil Action No. 3:15-CV-152

## MEMORANDUM OPINION

THIS MATTER is before the Court on *pro se* Petitioner Felipe Alvarado Gonzalez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 332). For the reasons set forth below, the Court DENIES the § 2255 Motion.

### I.  BACKGROUND

#### a.  *Factual Background*

This case relates to Petitioner Felipe Alvarado Gonzalez's ("Gonzalez" or "Petitioner") involvement in a Fraudulent Document Enterprise (FDE) that specialized in selling high-quality false identification cards to illegal aliens in the United States. The FDE had various cells throughout the United States, including in Pawtucket, Rhode Island.

According to the Statement of Facts (ECF No. 128), beginning prior to August 2013 and continuing through on or about October 30, 2013, Gonzalez managed the Pawtucket, Rhode Island document production cell under the supervision of Manuel Hidalgo Flores. Within the Pawtucket cell, Gonzalez was responsible for manufacturing and distributing fraudulent documents using information obtained from clients. Gonzalez regularly advertised the document production center to illegal aliens through daily distribution of business cards, word of mouth, and other methods. He would recruit illegal alien clients who wished to obtain false

identification documents, including counterfeit Permanent Resident Alien Cards, Social Security cards, out-of-state identification cards, and various international documents. During the time he was involved in the fraudulent document conspiracy, he was personally involved in the unlawful possession, transfer, and production of over 100 false identification documents.

### b. *Procedural Background*

On October 23, 2013, a federal grand jury in the Eastern District of Virginia returned a two-count indictment against Gonzalez and eleven of his co-conspirators. A six-count superseding indictment (ECF No. 85) was returned on December 3, 2013 charging Gonzalez and his co-conspirators with: (1) Racketeering Conspiracy, in violation of 18 U.S.C. § 1692(d) (count one); (2) Conspiracy and Attempt to Commit Assault Resulting in Serious Bodily Injury in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a)(6) and 2 (counts two and three); (3) Attempted Robbery Affecting Commerce, in violation of 18 U.S.C. §§ 1951(a) and 2 (count four); (4) Conspiracy to Possess, Produce and Transfer False Identification Documents and Possess a Document-Making Implement, in violation of 18 U.S.C. § 1028(f) (count five); and (5) Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h) (count six). Gonzalez was specifically charged in counts one, five and six.

On April 2, 2014, pursuant to a written plea agreement and accompanying statement of facts, Gonzalez pled guilty to Counts One and Six of the superseding indictment. (ECF No. 127.) On July 7, 2014, this Court sentenced Gonzalez to 60 months' imprisonment followed by three years of supervised release on count one, and 60 months' imprisonment followed by three years of supervised release, to run concurrently, on count six. Gonzalez was represented by Robert P. Geary ("Geary").[1] Gonzalez did not appeal his sentence.

On March 12, 2015, Gonzalez filed the instant § 2255 Motion. In his § 2255 Motion, Gonzalez alleges three grounds for relief:

Ground One:   Ineffective assistance of counsel for failure to explain the

---

[1] Geary's affidavit is attached to the Government's response as Exhibit 3.

|  | consequences of a guilty plea |
|---|---|
| Ground Two: | Due process violation because counsel and the Court failed to advise Gonzalez of "free" attorneys who could help him file a direct appeal |
| Ground Three: | Ineffective assistance of counsel for failure to advise Gonzalez of his right to appeal |

The United States filed a response in opposition on June 5, 2015 ("Gov'ts Resp.") (ECF No. 340)[2], and provided Gonzalez with *Roseboro* notice (ECF No. 341). Gonzalez filed a reply on July 7, 2015 ("Reply Mem.") (ECF No. 343). The issue is now ripe for review.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court generously interprets Gonzalez's factual allegations and legal contentions.

## III.   DISCUSSION

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2)

---

[2] The Court granted the Government's motion for extension of time. (ECF Nos. 336, 337.)

he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of guilty pleas, the two-pronged *Strickland* standard similarly applies. However, for the "prejudice" requirement the Court must "focus[] on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

    (1) <u>Ground One: Ineffective Assistance of Counsel for Failure to Explain Consequences of Guilty Plea</u>

In his first ground for relief, Gonzalez argues that his counsel was ineffective because he "failed to explain the sever[e] penalty [he] received." (§ 2255 Mot. at 5.) Gonzalez specifically claims that his counsel told him he would receive 36 to 40 months. (*Id.*) In opposition, the Government argues that Gonzalez cannot "establish ineffective assistance by his lawyer when

[Gonzalez] was fully advised of his sentencing exposure and went into the hearing with his eyes wide open." (Gov'ts Resp. at 7.)

The plea agreement in the present case first noted that the maximum penalty for each offense is a term of imprisonment of not more than 20 years. (Plea Agt., ECF No. 127, at ¶ 1.) The agreement also noted,

> The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum . . . but that the Court will determine the defendant's actual sentence in accordance with 18 U.S.C. § 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range . . . is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. Additionally . . . the Court, after considering the factors set forth in 18 U.S.C. § 3553(a), may impose a sentence above or below the advisory sentencing range . . . . The defendant further understands that the United States reserves the right to move for an upward variance or departure from the calculated guideline range.

(*Id.* at ¶ 5.) At the plea hearing on April 2, 2014, Gonzalez confirmed that he had read the plea agreement, (Gov't Resp., Ex. 1, at 5:10–12, 18), and understood "that the Court has the power to impose any sentence within the statutory maximum, and . . . the United States is reserving its right to move for an upward variance or departure . . . ." (*id.* at 10:19–22; 11:19; 12:24–13:1). Gonzalez also confirmed that he understood that "the Guidelines are not mandatory, and a court can impose a sentence above or below the recommended range within reason." (*Id.* at 14:17–20.)

Prior to sentencing, the United States Probation Officer prepared a presentence investigation report ("PSR") for Gonzalez. The Probation Officer determined Gonzalez's offense level to be 21 and criminal history category I, yielding a guideline range of 37-46 months. (PSR, ECF No. 235, at ¶¶ 93, 94.) The Government filed a Motion for Upward Variance (ECF No. 219), which the Court granted at the sentencing hearing (*see* Gov't Resp., Ex. 2, at 9:2–5), yielding a new guideline range of 51 to 63 months (*id.* at 9:6). The Court then sentenced Gonzalez to 60 months' imprisonment on count one and a term of 60 months' imprisonment on count six, to run concurrently. (*Id.* at 9:9–14.)

In his affidavit, Geary states that he talked with Gonzalez "about the sentencing

guidelines in general 3 or 4 times." (Geary Aff., at ¶ 3.) Gonzalez was told that the guidelines were advisory. (*Id.*) The concept of an "upward departure" was also explained to him as well as the Government's right to move for an upward departure. (*Id.*) Geary notes that the Plea Agreement was read to Gonzalez on multiple occasions. (*See id.* at ¶¶ 3, 4.) Geary submits that he never made any promises to Gonzalez regarding what the sentence would be. (*Id.* at ¶ 3.)

Based on the record as well as Geary's affidavit, Gonzalez cannot establish ineffective assistance of counsel in his first ground for relief. Gonzalez's claim that he was unaware of the consequences of the plea agreement, and that his counsel made promises of what his sentence would be, are unavailing in light of the evidence.

(2) <u>Grounds Two and Three: Ineffective Assistance of Counsel for Failure to Advise Gonzalez of his Right to Appeal and Failure to Provide a List of "Free" Attorneys</u>

In his second ground for relief, Gonzalez argues that the Court and his counsel failed to provide him with a list of "free" attorneys who could help him appeal. His third ground for relief is intertwined with his second, as Gonzalez argues ineffective assistance of counsel for failure to advise him of his right to appeal. As the Government emphasizes, Gonzalez does not claim that he instructed Geary to file a notice of appeal. Rather, Gonzalez's instant arguments are focused on his lack of knowledge regarding his appellate rights.

The plea agreement in this case expressly provided that "the defendant knowingly waive[d] the right to appeal the conviction and any sentence within the statutory maximum . . . ." (Plea Agt., ECF No. 127, at ¶ 6.) At the plea hearing, Gonzalez confirmed that he understood he was waiving his appellate rights. (*See* Gov't's Resp., Ex. 1, at 10:23–25; 11:19.) Thus, the record establishes that Gonzalez knew he waived his right to appeal by signing the plea agreement.

Moreover, Gonzalez knew he had a right to appeal. This Court specifically advised him of such right at his sentencing hearing. (Gov't's Resp., Ex. 2, at 11:6–9) ("Now, sir, you have a right to appeal any sentence imposed by this Court, and if you were going to do that you would have

to file a Notice of Appeal within fourteen days of today's date."). As the Government argues, "[a]lthough such an appeal effort would have been opposed by the United States under the waiver provision, the [Petitioner] cannot escape that this Court expressly advised him of his right to appeal." (Gov'ts Resp. at 9.)

However, Geary candidly admits that he has "no recollection of talking to [Gonzalez] about an appeal as he was pleading guilty and the Plea Agreement set forth there was no appeal. [Geary] did not tell [Gonzalez] he had a right to appeal." (Geary's Aff., at ¶ 4.) Because Geary has no recollection of consulting with Gonzalez regarding his appellate rights, the Court in determining an ineffective assistance claim must decide whether Gonzalez has shown: "(1) his attorney had a duty to consult under *Flores-Ortega*; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

Specifically, with regards to the first prong, "an attorney must consult with a defendant when there is reason to believe that either (1) a rational defendant would want to appeal or (2) the defendant reasonably demonstrated to his attorney that he was interested in appealing." *Id.* at 268 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). Factors relevant to this determination include whether the conviction followed a trial or guilty plea, and if the latter, "'whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived appeal rights.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

As to the third prong, "if the defendant did not [unequivocally] instruct his attorney [to file a notice of appeal] and his attorney subsequently did not fulfill his consultation obligations, prejudice will be presumed if the defendant can show that, had he received reasonable advice from his attorney, he would have instructed his attorney to file a timely notice of appeal." *Id.* at 268–69 (citing *Flores-Ortega*, 528 U.S. at 486). In making this determination, the court should consider whether there were nonfrivolous grounds for appeal. *Id.* at 269.

Here, Gonzalez cannot meet his burden. First, he fails to demonstrate that Geary had a

duty to consult. Gonzalez does not indicate that he demonstrated to Geary his interest in appealing. Moreover, the plea agreement expressly waived Gonzalez's right to appeal. (Plea Agt., ECF No. 127, at ¶ 6.) Further, even if Geary had a duty to consult, Gonzalez can still not fulfill the prejudice prong. As the Government notes, "[t]he scope of potentially appealable issues was . . . extremely limited in scope due to the appellate waiver provision–a waiver the [Petitioner] was aware of through his review of the agreement and sworn affirmation during his guilty plea (all with the aid of an interpreter)." (Gov'ts Resp. at 10.) For those reasons, Geary's second and third grounds for relief must also be denied.[3]

## IV.   CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Gonzalez is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all

---

[3] To the extent Gonzalez argues that his due process rights were violated when the Court failed to provide a list of Spanish-speaking attorneys, Gonzalez fails to provide any support or citation that requires such a list to be provided. Moreover, Gonzalez was provided with an interpreter: (1) who was present during all meetings with Geary, (Geary Aff. ¶ 1); (2) who read each document from the U.S. Attorney, court clerk or probation officer to Gonzalez, (*id.* at ¶ 2), and (3) who was present during all court proceedings. With the help of the interpreter, Gonzalez confirmed that he understood the terms of his plea agreement.

counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __14th_____ day of July 2015.